IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANGLES CLARK, JR., § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:07-CV-007-Y |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A.    STATEMENT OF THE CASE

Plaintiff Angles Clark, Jr., filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Clark applied for disability insurance and SSI benefits on December 27, 2004, alleging disability commencing December 23, 2004. (Tr. 72, 75). Clark maintained his insured status for purposes of disability insurance benefits at all times relevant to the Commissioner's decision.

The Social Security Administration denied Clark's applications for benefits both initially and on reconsideration. Clark requested a hearing before an administrative law judge (the "ALJ"), and ALJ Jack W. Raines held a hearing on April 5, 2006 in Fort Worth, Texas. (Tr. 252). Clark was assisted at the hearing by a non-attorney representative. On May 19, 2006, the ALJ issued a decision that Clark was not disabled and not entitled to disability insurance or SSI benefits. (Tr. 12-17). The Appeals Council denied Clark's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.    STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to

the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

   1.  Whether the ALJ's determination is supported by substantial evidence and in compliance with relevant legal standards; and

   2.  Whether there is new and material evidence that requires remand of this case for further administrative consideration.

D.  ADMINISTRATIVE RECORD

   1.  Treatment History

Clark was hospitalized on December 23, 2004, for injuries sustained in a car accident. (Tr. 165, 175). Diagnostic studies of Clark's cervical spine confirmed left-sided fractures at C4, and drug screening was positive for opiates, marijuana, and cocaine derivatives. (Tr. 174, 185). Clark remained intact neurologically. Clark was discharged on December 27, 2004, with instructions to wear a cervical collar at all times until a follow-up visit in six weeks. (Tr. 174).

Clark underwent a consultative examination with William Bosworth, M.D., on March 1, 2005. (Tr. 198). Clark complained of chronic back pain since 1998 with occasional radiation into his left leg; shoulder problems as a result of a car accident in the 1990s; and neck pain from injuries he sustained in a car accident in December. Clark also had hepatitis C as a result of previous IV drug use. Clark reported that he was able to do housework, grocery shopping, and meal preparation. He did not use a cane, crutch, or walker. He estimated that he could walk a distance of six blocks,

stand for five or ten minutes, and sit for five minutes. (Tr. 199).

On examination, Clark exhibited no appreciable low back pain with palpation. Heel, toe, and tandem walking were poorly performed, but Clark was able to get on and off the examining table without assistance. (Tr. 200). Gait and station were assessed as unrestricted. Fine and dexterous finger movements were normal, and no atrophy was noted in any extremity. Deep tendon reflexes were 1+ in both knees, and peripheral sensation was intact in all extremities. (Tr. 200).

X-rays showed moderately severe degenerative disc disease at L5-S1; mild degenerative disc disease at L4-L5; mild to moderate degenerative changes at L5-S1; and no lumbar spondylosis.[1] (Tr. 202). Cervical spine x-rays showed moderately severe degenerative disc disease with minimal spondylosis at C4-C5, C5-C6, and C6-C7. (Tr. 203). An x-ray of Clark's left shoulder was compatible with separation of the acromioclavicular (AC) joint, but no sclerotic or degenerative changes were noted. (Tr. 204).

Clark also saw Susan Linder, M.D, for evaluation in May 2005. Linder noted that Clark was in moderate distress secondary to pain. Clark ambulated with a normal gait, and was able to heel walk and toe walk without difficulty. (Tr. 214). He was tender to palpation of his cervical spine, with a moderately decreased cervical range of motion. Palpation of his lumbosacral spine, hips, and buttocks also elicited complaints of tenderness. His lumbar range of motion was mildly to moderately decreased. Sensation was intact in Clark's lower extremities, and strength was 4/5 bilaterally in his lower extremities. (Tr. 214). Linder diagnosed chronic low back pain. Lumbar

---

[1] Spondylosis refers to degenerative spinal changes due to osteoarthritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1780 (31st ed. 2007).

and cervical magnetic resonance imaging (MRI) confirmed degenerative changes. (Tr. 217-18).

    2.    Administrative Hearing

Clark testified that he was born January 25, 1957. (Tr. 258). He obtained a GED in 1980. (Tr. 105). Clark last worked in September 2004. He testified that he stopped working because of difficulty getting along with people, memory problems, and an inability to do the lifting that the job required. (Tr. 259-60). Clark had his car accident a few months later, on December 23, 2004. (Tr. 260). Clark testified that was unable to return to work because of back pain, a shoulder impairment, an old wrist injury, and knee problems. (Tr. 260-61).

Clark lived with his elderly mother and spent most of his time visiting with her and his nieces. (Tr. 261). He cleaned his room and helped his mother with chores that did not require bending or lifting. His mother did most of the cooking, and Clark had three brothers and a sister who helped with the heavier chores and yard work. (Tr. 262). Clark testified that his doctor had told him to lift no more than twenty-five or thirty-five pounds. (Tr. 262).

Clark did not exercise. He testified that his left ankle swelled up when he walked, and walking also caused left-sided back and leg pain. (Tr. 263). Clark testified that he was able to bathe and dress himself. He watched television or read for entertainment, but sometimes found it hard to concentrate on what he was reading. (Tr. 263). If he felt well enough, he attended church services once or twice a week. (Tr. 264). Clark described his energy level as low, and he felt guilty and depressed sometimes. He had been prescribed Wellbutrin, which helped his energy level, but he continued to have some concentration problems. (Tr. 276). He testified that he had been sober and

drug-free since December 2004. (Tr. 272).

Vocational expert Shelly Eike testified that Clark's previous jobs included short-order cook, which was a light, semi-skilled position; mill worker, which was a semi-skilled position requiring heavy exertion; and laundry laborer, which was an unskilled position requiring medium exertion. (Tr. 273). The ALJ proposed the following hypothetical:

> Assume an individual the same age, education and vocational history as the Claimant, further assume that this hypothetical individual had the following limitations, lift and carry occasionally 20 pounds, lift and carry frequently no more than 10 pounds, stand and walk at least six hours in an eight-hour day, sit at least six hours in an eight-hour day, would be able to alternate sitting or standing, no climbing of ramps, ladders, or scaffolds, no overhead reaching with the left arm, all other manipulative limitations would be constant on the left, constant on the right, no communication limitations, no environmental limitations.

(Tr. 274). Eike testified that a person with these limitations could not perform any of Clark's past relevant work, but that there would be other work that the person could perform. Examples included unskilled work as a paper sorter, with 40,000 jobs nationwide and 2,000 jobs in Texas; small parts inspector, with 70,000 jobs nationwide and 4,500 jobs in Texas; and small products assembly, with an estimated 80,000 jobs nationwide and 8,000 jobs in Texas. (Tr. 274-75).

    3.    ALJ Decision

The ALJ found that Clark had not engaged in substantial gainful activity after his alleged onset date. The ALJ further found that Clark's back and shoulder pain were severe impairments, but also found that Clark had no impairment or combination of impairments meeting or medically equaling the criteria of a listed impairment. (Tr. 13). Instead, the ALJ found that Clark retained the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently,

stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, with the option to sit or stand. Clark was not capable of climbing ramps, stairs, ladders, ropes, or scaffolds, and was unable to reach overhead with his left upper extremity; however, Clark was capable of constant handling, fingering, and feeling with both upper extremities, and constant reaching with his right upper extremity. (Tr. 13-14).

The ALJ found that Clark's impairments precluded him from performing any of his past relevant work, but based on the vocational expert testimony, the ALJ found Clark was capable of performing other work existing in significant numbers in the regional and national economies. (Tr. 16). Accordingly, the ALJ concluded that Clark was not disabled and was not eligible for disability insurance or SSI benefits. (Tr. 17).

D. DISCUSSION

Clark contends that the ALJ applied incorrect legal standards in assessing Clark's work-related abilities. Clark also contends that the disability determination is not supported by substantial evidence, and with little discussion, outlines a number of areas in which he finds the ALJ's decision to be deficient.

Clark asserts that the written decision does not contain an adequate evaluation of all of his medically determinable impairments, and in particular, he complains that the ALJ ignored his neck pain and degenerative disc disease. The ALJ, however, considered Clark's cervical fracture and x-rays, which confirmed mild to moderately severe degenerative disc disease of his cervical and lumbar spine, but noted that physical examination showed essentially normal findings. (Tr. 14). The ALJ did not ignore Clark's cervical problems or degenerative disc disease in assessing Clark's

physical impairments.

Clark also complains that the ALJ did not fully and fairly develop the record with respect to Clark's mental impairments, which limit his ability to concentrate and affect his ability to get along with other people. The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits, and if that duty is not satisfied, than the ALJ's decision is not substantially justified. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). Reversal of the decision, however, will be appropriate only if the claimant demonstrates prejudice. *Ripley*, 67 F.3d at 557. The claimant must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision. *Newton*, 209 F.3d at 458.

Even if the ALJ should have made further inquiry into Clark's mental impairments, no prejudice is shown as a result of the ALJ's failure. At the hearing Clark testified that he was on medication that helped with his feelings of depression and decreased energy, (Tr. 266), but he has submitted no medical records documenting therapy, counseling, or other psychiatric treatment. In addition, the state agency medical consultants who reviewed Clark's records found that Clark had no severe mental impairment and noted that the medical record contained no significant reference to any mental symptoms. (Tr. 218-30). No prejudice is shown given the absence of objective evidence to support Clark's subjective complaints.

Clark contends that his representative at the hearing was not an attorney and that no medical expert testimony or consultative orthopedic examination was obtained. Clark does not explain how any of this information constitutes legal error in his case or undermines the evidentiary support for

the Commissioner's decision.

Clark also contends that the ALJ did not engage in a proper credibility assessment. In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SOCIAL SECURITY RULING 96-7p. Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529, 416.929. A claimant's testimony must be consistent with the objective medical evidence and other available evidence. *Id.*; 20 C.F.R. § 416.929. Factors to consider include (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) the medication used to alleviate the pain; (5) other treatment measures; and (6) other relevant factors. 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ stated that he had considered Clark's subjective complaints in accordance with the applicable regulations and rulings and concluded that Clark had some functional limitations, but not of the disabling degree alleged. (Tr. 14-15). The ALJ found Clark's credibility was questionable given his failure to comply with medical advice after his car accident and his contradictory statements about his daily activities, (Tr. 15), but agreed that Clark did have some functional limitations that would prevent him from working at the heavier levels of exertion. The ALJ's discussion reflects adequate consideration of Clark's complaints, and Clark has not demonstrated a lack of substantial evidence to support the ALJ's decision that Clark's subjective complaints were not fully supported by the objective medical evidence.

Clark argues that the ALJ's decision is unsupported by substantial evidence because the vocational expert's testimony was offered in response to a hypothetical that did not accurately portray Clark's impairments. The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Clark does not argue that the hypothetical omits disabilities as found by the ALJ, but instead asserts that he has a mental impairment that affect his work-related abilities to a degree that meets or exceeds a listed impairment. The court has already addressed Clark's complaints about the ALJ's failure to develop the record with respect to Clark's mental impairment, and Clark has not provided further information that makes it necessary to revisit this issue. Clark has not shown that the vocational testimony elicited is unreliable or that the ALJ's decision is unsupported by substantial evidence.

Clark also requests that his claims be remanded based on new and material evidence, consisting of a statement dated February 16, 2006, in which Brian Jenkins, M.D.,[2] opined that Clark was permanently disabled due to lumbar and cervical problems that render him unable to sit or stand for more than thirty minutes. (Plf. Brief, Ex. 1). The court will remand an action upon a showing that there is new evidence that is material and there is good cause for the failure to produce the evidence in the earlier proceedings. 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995). New evidence is material if it relates to

---

[2] Although Clark does not explain who Jenkins is, Jenkins lists his business address as the county health clinic where Clark has previously received routine medical treatment.

the time period during which the disability benefits were denied and there is a reasonable probability that this new evidence would change the outcome of the administrative proceedings. *Ripley*, 67 F.3d at 555.

Jenkins's statement is dated February 2006, three months before the ALJ issued his decision and almost nine months before the Appeals Council denied Clark's request for review. Although the statement appears to relate to Clark's condition during the relevant time period, the statement is not new and Clark does not explain why he could not have provided the statement earlier in the administrative proceedings. Remand to allow the Commissioner an opportunity to consider Jenkins's opinion is not appropriate.

RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until October 18, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.

*See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until October 18, 2007 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED SEPTEMBER 27, 2007.

/s/  Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE